**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIJAH PIERRE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-5881** |
| | : | |
| **WOODS SERVICES, INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **January 11, 2021**

A patient attacked a residential counselor working for a company providing care to those struggling with complex and intensive medical and behavioral needs. This attack resulted in injuries causing the counselor to take leave under the Family and Medical Leave Act. His employer granted the leave. He returned to work when his doctor allowed him to return on light duty. The employer terminated him four days after being cleared to return to work. The former employee now sues the employer invoking our jurisdiction under the American with Disabilities Act and Family and Medical Leave Act. He also sues for common law retaliation claiming the employer fired him because he filed a workers' compensation claim. He now admits he cannot state a claim for interference under the Family and Medical Leave Act. He also does not state a claim for common law retaliation as he does not plead a temporal connection between seeking workers' compensation benefits and termination. The former employee may proceed on his claims under the American with Disabilities Act and for retaliation under the Family and Medical Leave Act.

## I.    Alleged Facts[1]

Elijah Pierre worked for nearly two years as a Residential Counselor for Woods Services, Inc., a non-profit entity providing care to children and adults with complex and intensive medical and behavioral healthcare needs.[2] On March 20, 2019, a person under Mr. Pierre's care attacked him.[3] He suffered severe injuries to his head and mouth, and immediately reported these injuries

to his supervisor.[4] Mr. Pierre called out of work the next day due to symptoms suffered from the attack.[5] He called out again a few days later and sought treatment at the emergency room for his ongoing symptoms.[6] Mr. Pierre returned to work on March 27, 2019, but continued to call out of work on several occasions due to the pain of his injuries until the first week of April.[7]

On April 8, 2019, Mr. Pierre applied for leave under the Family and Medical Leave Act to continue to treat and heal the injuries he suffered from the March 20, 2019 attack.[8] Woods Services approved Mr. Pierre's leave on June 3, 2019.[9] On July 26, 2019, an unidentified person approved his return to work on "light duty."[10] Woods Services responded to this update by informing Mr. Pierre it could not accommodate his light duty restrictions and he could either work beyond those restrictions as a substitute or be terminated.[11] Woods Services terminated Mr. Pierre effective July 30, 2019.[12] Woods Services represented Mr. Pierre did not contact Woods Services nor request a transfer, which Mr. Pierre alleges is false.[13] Mr. Pierre's injuries interfered with one or more major life activities.[14]

## II.    Analysis

Mr. Pierre sues Woods Services claiming it violated the Americans with Disabilities Act, Family and Medical Leave Act (FMLA)[15], and engaged in common law retaliation by terminating him due to his work-related injury, disability or perceived disability, request for reasonable accommodation, use of FMLA benefits, and pursuit of workers' compensation benefits.[16] Woods Services now moves to dismiss Mr. Pierre's FMLA interference claim, FMLA retaliation claim, and common law retaliation claim for failure to plead specifics necessary to state interference or retaliation claims. Mr. Pierre untimely responded to Woods Services's motion, agreeing to withdraw his FMLA interference claim and arguing he pleaded an FMLA claim.[17]

### A.      Mr. Pierre pleads an FMLA retaliation claim.

Mr. Pierre claims Woods Services violated the retaliation provisions of the Family and Medical Leave Act by terminating his employment four days after he advised of his ability to return to work from leave.[18] Woods Services argues he fails to plead the causation element of an FMLA retaliation claim because there is no unduly suggestive temporal proximity between the invocation of his leave and his termination.[19]

Congress, through the Family and Medical Leave Act, entitles employees to take up to twelve weeks of unpaid leave for a serious health condition.[20] The Act "contains two distinct types of provisions: a series of prescriptive rights, also known as 'entitlement' or 'interference' provisions, and protection against discrimination based on the exercise of these rights, often referred to as the 'discrimination' or 'retaliation' provisions."[21] "[W]hen employees invoke rights granted under the FMLA, employers may not 'interfere with, restrain, or deny the exercise of or attempt to exercise' these rights. Nor may employers 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful.'"[22] The Act prohibits employers "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."[23]

To state a claim for FMLA retaliation, Mr. Pierre must allege "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights."[24] To sufficiently allege causation, Mr. Pierre may rely on "either an (1) unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing . . .."[25] "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," courts typically consider periods of days or weeks, not months.[26]

Woods Services argues Mr. Pierre fails to plausibly allege the causation element because the seven-week period between the approval of his FMLA leave on June 3, 2019 to the date of his termination on July 30, 2019 is not sufficiently temporally proximate to be unduly suggestive of a retaliatory motive.  It contends our Court of Appeals measures temporal proximity from the first date on which an employee engages in protected activity.

If Woods Services is correct temporal proximity is measured from the time it approved his FMLA leave on June 3, 2019, we would agree a seven-week period may not be unduly suggestive. But Woods Services is incorrect.

The authority cited by Woods Services does not support its argument. It cites *Blakney v. City of Philadelphia* for the proposition our Court of Appeals measures temporal proximity from the first date on which the litigant engaged in his protected activity.[27] Woods Services then argues because Mr. Pierre's protected activity is the approval, and taking, of FMLA leave beginning June 3, 2019, the seven-week period until his termination is not unduly suggestive of causation and he must allege "time plus" a pattern of antagonism.

*Blakney* is distinguishable. Mr. Blakney filed a charge with the Equal Employment Opportunity Commission alleging race discrimination under Title VII, sued the City two years later, voluntarily resigned a year after he filed his lawsuit, and then sought reinstatement which the City denied. The Court of Appeals measured the temporal proximity from the time of Mr. Blakney's protected activity–the filing of his EEOC complaint–to the City's refusal to reinstate him.[28] The Court of Appeals found the three-year period between Mr. Blakney's EEOC charge to the adverse employment action well outside an unduly suggestive temporal proximity.

The protected activity in *Blakney* is the filing of an EEOC charge. The case did not analyze an FMLA retaliation claim or hold "protected activity" under the FMLA is the approval, and start

4

of, FMLA leave. Woods Services provides us with no case from our Court of Appeals holding protected activity for an FMLA retaliation claim is confined only to the start of FMLA leave, with the remainder of the approved leave to be ignored, to show causation through temporal proximity.

Woods Services' reliance on *Blakney* to support its argument has been rejected by district courts. For example, in *Reyer v. Saint Francis Country House*, the employee took periods of FMLA leave beginning in November 2011.[29] The employee took another twelve-week FMLA leave in 2013, expiring on December 23, 2013. The employer terminated the employee on the same day.[30] The employer argued temporal proximity must be measured from November 2011, the date the employee took his first FMLA leave, making the two year period between November 2011 and the December 23, 2013 termination too temporally remote to show causation.

Judge Goldberg rejected employer's argument and distinguished *Blakney*. He reasoned the filing of an EEOC complaint is the protected activity in *Blakney* unlike an FMLA leave which is a period of protected activity consistent with our Court of Appeals' "precedent clearly recogniz[ing] . . . the temporal analysis can account for instances in which a plaintiff engages in multiple protected activities."[31] Rejecting the employer's argument, Judge Goldberg found termination on the day FMLA leave expired unduly suggestive temporal proximity sufficient to demonstrate causation at the summary judgment stage.

In *Mackenzie v. Caplan Industries, Inc.*, Judge Kenney measured temporal proximity from the last day of plaintiff's twelve week FMLA leave.[32] In *Mackenzie*, the employee began an approved twelve-week FMLA leave after a March 28, 2018 accident but took a total of seventeen weeks, advising his employer of his ability to return to work on July 26, 2018.[33] His employer terminated him four days later. Judge Kenney analyzed temporal proximity from the exhaustion of twelve weeks (reasoning the five extra weeks is not FMLA protected) and the termination,

concluding the five weeks between the exhaustion of FMLA leave and termination is within our Court of Appeals's window of temporal proximity and denied the employer's motion to dismiss.[34] In reaching his conclusion, Judge Kenney recognized the "FMLA protects employees from employer retaliation by: (1) 'prohibit[ing] employers from discriminating against employees who *request* FMLA protected leave' and (2) "prevent[ing] employers from denying employment to employees once they *return fr*om an FMLA leave period."[35]

In *Mammen v. Thomas Jefferson University*, Judge Beetlestone found the employee's allegations she met with her supervisors on May 9, 2017 to advise of a medical condition requiring leave; the employer approved her FMLA leave; she took FMLA leave from December 5, 2017 through January 16, 2018; and the employer, upon her return to work on January 17, 2018, terminated her stated an "unusually suggestive temporal proximity" sufficient to demonstrate a causal connection and state a claim for FMLA retaliation.[36] Judge Beetlestone did not examine temporal proximity from the date plaintiff advised she needed leave to address her medical issue, or the date the employer approved FMLA leave, or the date plaintiff began leave; instead, Judge Beetlestone looked to the date plaintiff returned to work after her leave.

Woods Services's argument is inconsistent with the FMLA. The FMLA requires "any eligible employee" who takes FMLA leave "***shall be entitled***, ***on return from such leave*** --(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[37] If an employee "shall be entitled, ***on return from such leave***" to be restored to either the position held at the time of leave or an equivalent position, we cannot conceive an adverse action "on return from such leave" does not allege unduly suggestive temporal proximity sufficient to satisfy the causation element of an FMLA retaliation

claim. If we accepted Woods Services's argument we must analyze temporal proximity **only** at the start of the statutorily guaranteed leave and not view the entire leave as protected activity, an employee could never satisfy the causation element of an FMLA retaliation claim based on temporal proximity. Under Woods Services's argument, the employee would be forced to allege, and ultimately prove, "time plus" other evidence of antagonism. There is no support for such an argument.

Mr. Pierre applied for FMLA leave on April 8, 2019, Woods Services approved leave on June 3, 2019, and he became eligible to return to light duty work on July 26, 2019.[38] For purposes of determining whether an "unduly suggestive temporal proximity" exists, we use the date of the last protected activity on July 26, 2019, and the date of Mr. Pierre's termination on July 30, 2019.[39] Mr. Pierre's termination occurred only four days after the last protected activity.  No one disputes four days represents an "unduly suggestive temporal proximity" between the protected activity and Mr. Pierre's termination. We deny Woods Services's motion to dismiss the FMLA retaliation claim.

**B.      Mr. Pierre admittedly fails to plead a causal connection for a common law retaliation claim.**

Mr. Pierre also alleges Woods Services terminated him in retaliation for pursuing workers' compensation benefits. Woods Services argues Mr. Pierre fails to plead a *prima facie* claim of retaliatory discharge because he provides no facts to support a causal link between his protected activity–making a workers' compensation claim–and Woods Services's adverse action.[40]

Pennsylvania recognizes a "common law cause of action for wrongful discharge of an employee who has filed a claim for workers' compensation."[41] Although the elements of these claims have not been established by the Pennsylvania Supreme Court, "federal courts have predicted that it would apply the *McDonnell Douglas* framework used for retaliation suits under

Title VII."[42] "A *prima facie* case of retaliatory discharge would thus require a plaintiff to show '(1) the employee engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.'"[43] Temporal proximity between the protected conduct and the adverse action may satisfy the causal connection element and "support an inference of retaliation."[44] "When the chief evidence relied upon by the plaintiff to establish the causal connection is the temporal proximity, courts have, at a minimum, required the plaintiff to plead specific dates of the protected activity and the adverse action."[45]

During oral argument on Woods Services's motion to dismiss, Mr. Pierre's counsel asserted the application for workers' compensation benefits occurred around the same time of Mr. Pierre's FMLA leave but conceded he did not plead such facts. Having failed to plead when he applied for workers' compensation benefits relevant to his termination, we grant Woods Services' motion to dismiss without prejudice to amend to cure this deficiency. [46]

## III.   Conclusion

We deny Woods Services's Motion to dismiss Mr. Pierre's FMLA retaliation claim. We dismiss Mr. Pierre's FMLA interference claim upon consent and his common law retaliation claims without prejudice to timely amend.

---

[1] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must

'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[2] ECF Doc. No. 1 ¶ 5; Woods Services, *About Us*, https://www.woods.org/woods-services/ (last visited Jan. 6, 2021).

[3] ECF Doc. No. 1 ¶ 10.

[4] *Id.* ¶¶ 11-12.

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 16.

[7] *Id.* ¶¶ 17-18.

[8] *Id.* ¶ 19.

[9] *Id.* ¶ 20.

[10] *Id.* ¶ 21.

[11] *Id.* ¶¶ 22-23.

[12] *Id.* ¶ 24.

[13] *Id.* ¶¶ 25-26.

[14] *Id*. ¶ 13.

[15] 29 U.S.C. § 2601, *et seq.* ("FMLA")

[16] *Id.* ¶ 27.

[17] ECF Doc. No. 7.  Mr. Pierre filed this response over a week late and after the time afforded him to amend in response to a motion to dismiss.  We consider his belated arguments at this early stage.

[18] ECF Doc. No. 1 ¶¶ 41-46.

[19] *Id.* at 10.

[20] 29 U.S.C. § 2612(a)(1).

[21] *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

---

[22] *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 151 (3d Cir.  2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) and citing 29 U.S.C. § 2615(a)(1), (a)(2)).

[23] *Capps*, 847 F.3d at 151.

[24] *Banner v. Fletcher*, No. 20-1580, 2020 WL 6502983, at *3 (3d Cir. Nov. 5, 2020) (citing *Capps*, 847 F.3d at 152 n. 6).

[25] *Clark v. Phila. Hous. Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017) (quoting *Budhun v. Reading Hosp. and Medical Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014)).

[26] *Dudhi v. Temple Health Oaks Lung Ctr.*, No. 18-3514, 2019 WL 426145, at *8 (E.D. Pa. Feb. 4, 2019) (collecting cases).

[27] 559 F. App'x 183, 186 (3d Cir. 2014).

[28] *Id.*at 186.

[29] 243 F. Supp. 3d 573 (E.D. Pa. 2017).

[30] *Id.* at 587–88.

[31] *Id.* (citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 178 (3d Cir. 1997) (retaliatory action occurred "[s]everal months after [the plaintiff's] last protected activity" along with other evidence of antagonism is sufficient to allege a causal connection); *Urey v. Grove City Coll.*, 94 F. App'x. 79, 81 (3d Cir. 2004) (analyzing temporal proximity based on last instance of protected activity); *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016) (same)).

[32] *Mackenzie v. Caplan Industries, Inc.,* No. 19-371, 2019 WL 3284886, * 3–*4 (E.D. Pa. July 19, 2019) (citing *Reyer*, 243 F. Supp. 3d at 587-88).

[33] *Id.* at * 1.

[34] *Id.* at * 4.

[35] *Id.* at * 3 (quoting *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 190 (3d Cir. 1997) (emphasis added)).

[36] 462 F.Supp. 3d 518, 527 (E.D.Pa. 2020).

[37] 29 U.S.C. § 2614(a)(1) (emphasis added).

[38] ECF Doc. No. 1 ¶¶ 19-21.

[39] *Id.* ¶¶ 19-24.

[40] *Id*. at 12.

[41] *Steele v. Pelmor Laboratories, Inc.*, No. 16-3088, 2017 WL 5515919, at *6 (E.D. Pa. Apr. 18, 2017), *aff'd*, 725 F. App'x 176 (3d Cir. 2018) (citing *Shick v. Shirey*, 716 A.2d 1231, 1238 (Pa. 1998)).

[42] *Id.* (citing *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009)).

[43] *Id.* (citing *Deily v. Waste Mgmt. of Allentown*, 55 F. App'x 608 (3d Cir. 2003) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)).

[44] *Grasty v. World Flavors, Inc.*, No. 11-1778, 2011 WL 3515864, at *10 (E.D. Pa. Aug. 11, 2011).

[45] *Id.*, at *10 (citing *Deily*, 55 F. App'x at 609).

[46] "A court must grant leave to amend absent 'undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Acosta v. Democratic Committee*, 288 F. Supp. 3d 597 (E.D. Pa. 2018) (quoting *Mullin v. Balicki*, 873 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).